**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **GARY BROWN AND MARIA BROWN,** | ) | **CASE NO. 8:04V212** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| **MARK L. HIGGINS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Defendant's Motion for Partial Summary Judgment (Filing No. 34). The parties have submitted briefs and indexes of evidence in support of their respective positions. For the reasons stated below, no summary judgment will be granted, although the Court does find that Plaintiff Gary Brown was negligent as a matter of law.

**FACTS**

On June 5, 2000, at approximately 8:20 a.m., the Plaintiff Gary Brown ("Gary") was driving his pickup truck westward on Highway #35 in Stanton County, Nebraska, with his wife, Maria Brown ("Maria") riding as a passenger. Defendant Mark L. Higgins ("Higgins") was following behind the pickup truck in his Toyota Corrolla. (Complaint, Filing No. 1, ¶ 4; Answer and Counterclaim, Filing No. 10, ¶ 16). The pickup was traveling under the 60-mile-an-hour speed limit, and Higgins decided to pass the truck in the east-bound lane of the two-lane highway. (Deposition of Gary Brown, Filing No. 39, Ex. A ("G. Brown Depo.") 14:13-22, 20:11-12; Deposition of Mark Higgins, Filing No. 36, Ex. 4 ("Higgins Depo.") 18:3-8). At about the same time, Gary decided to turn left into a driveway in order to return home to retrieve a forgotten item. (G. Brown Depo. 21:23 to 22:4) Although Gary has

testified that he activated his left turn signal 100 to 110 feet before making his left turn and slowed the truck with the brakes, Higgins has testified that he looked for a turn signal and brake lights on the truck and saw neither. (G. Brown Depo. 25:13 to 27:8, 29:18-22; Higgins Depo. 46:1-10). The Toyota struck the pickup on the driver's side as the pickup entered the east-bound lane; Gary and Maria were injured; and both vehicles were damaged. (Complaint ¶¶ 4, 8-10, 13-15, 18-19, 22-23; Answer and Counterclaim ¶¶ 19, 21). Gary and Maria brought this action invoking the Court's diversity jurisdiction, and Higgins filed a counterclaim. (Complaint ¶¶ 1-3; Answer and Counterclaim ¶¶ 14-21).

The facts relevant to Higgins's partial Motion for Summary Judgment are limited. Higgins asserts that Gary's claim is barred because Gary was negligent as a matter of law by failing to look for and observe Higgins's approaching vehicle immediately before initiating the left turn, and such negligence was fifty percent or more of the proximate cause of the accident. (Brief in Support of Defendant's Motion for Partial Summary Judgment, Filing No. 35, pp. 1, 6-11). Considering the evidence in a light most favorable to the Plaintiffs, I will assume for purposes of the pending motion that Gary looked in his rear-view mirror when he was at the top of a hill, more than 750 feet east of the driveway, and saw no one; and, as he was in the process of making his left turn, he looked first in his rear-view mirror, seeing no one, and then in his side mirror for the "blind spot," seeing Higgins's car for the first time, when it was too late to prevent the collision. (G. Brown Depo. 29:23 to 31:15; Filing No. 39, Ex. I, diagram by Dr. Ted. Sokol, Accident Reconstructionist).

**STANDARD OF REVIEW**

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

### *Nebraska Law*

Because Nebraska is both the forum state and the state in which all relevant events occurred, the Court applies Nebraska substantive law. *Carson v. National Bank of Commerce Trust and Sav.*, 501 F.2d 1082, 1083 (8th Cir. 1974).

The parties refer the Court to several Nebraska Supreme Court cases involving motor vehicle accidents resulting from left turns. The facts at issue in all those decisions pre-dated Nebraska's comparative negligence law,[1] and so the decisions applied Nebraska's earlier contributory negligence law. Nonetheless, there are certain general principles set forth in the cases that are important to the resolution of the issues now before this Court. First, a left-turning motorist must maintain a proper lookout both to the front and to the rear before executing a left turn between intersections. *Melick v. Schmidt*, 557 N.W.2d 645, 650 (Neb. 1997), citing *Huntwork v. Voss*, 525 N.W.2d 632, 188 (Neb.

---

[1] Nebraska actions accruing before February 8, 1992, were and are governed by a contributory negligence standard. Neb. Rev. Stat. 25-21,185 (1995). Actions accruing later are governed by a comparative negligence standard:
> Any contributory negligence chargeable to the claimant shall diminish proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence but shall not bar recovery, except that if the contributory negligence of the claimant is equal to or greater than the total negligence of all persons against whom recovery is sought, the claimant shall be totally barred from recovery. The jury shall be instructed on the effects of the allocation of negligence.

Neb. Rev. Stat. 25-21,185.09 (1995).

4

1995).  Second, the observations must be made immediately before the impending movement; otherwise, they would be completely ineffective to accomplish the purpose intended.  *Id*; *Harrison v. Seagroves,* 549 N.W.2d 644, 650 (Neb. 1996).  Third, If the driver looks but does not see an approaching automobile because of unusual conditions or circumstances, the question of the driver's negligence is usually one for the jury. *Melick*, 557 N.W.2d at 650; *Huntwork*, 525 N.W.2d at 188*; Kruger v. Ervin Clark Construction Co.,* 88 N.W.2d 778, 781-81 (Neb. 1958); *Petersen v. Schneider*, 46 N.W.2d 355, 360 (Neb. 1951)*.*  For example, if a driver's view of a vehicle approaching from the rear was obstructed, and the approaching vehicle "pulled out to pass at the last second," then "reasonable minds could draw different conclusions from this evidence."   *Melick,* 557 N.W.2d at 651.  See also *Huntwork,* 525 N.W.2d at 636.  Fourth, "[w]here the driver of a vehicle turning across a street or highway between intersections fails to look at all at a time and place where to look would be effective, or looks and negligently fails to see that which is plainly in sight, or is in a position where he cannot see, a question for the court is usually presented." *Kruger,* 88 N.W.2d at 781; *Petersen*, 46 N.W.2d at 359.  Finally, the Nebraska Supreme Court has held that a driver who attempts a left turn between intersections, and who does not look to rear for passing traffic when the driver is within 200 feet of making the turn, is negligent as a matter of law.  *Petersen,* 46 N.W.2d at 358-59 (Neb. 1951).

   The facts of the *Petersen* case are very similar to those now before this Court.  The defendant in *Peterson* was driving his truck east on a highway, and decided to make a left turn into a driveway.  When he was approximately 500 feet from the driveway entrance, he saw the plaintiff's car through the rear-view mirror, and estimated that the car was about

one half-mile behind him, traveling at a speed of about 70 miles per hour. The defendant claimed to have given a left turn signal for 300 feet before the driveway entrance as he slowed the truck, although the occupants of the plaintiff's vehicle said no signal was given. The plaintiff's vehicle attempted to pass the defendant's truck, and the two vehicles collided as the defendant turned left. The Nebraska Supreme Court found the defendant's actions to be negligent as a matter of law, specifically holding that "[t]he requirement that one must look to the front and rear before making a left turn between intersections is not met by looking at a point 200 feet distant from the place of the intended left turn." *Id.* at 358. In *Petersen*, the Nebraska Supreme Court found that the proximate cause of the accident, under the record made, was the failure on the part of the driver of the truck to look to the rear at a time when looking would have been an effective means of averting the accident. *Id.* at 359. While the facts of *Petersen* are very similar to those presented to this Court, there are differences, including the fact that the driver of the left-turning truck in *Petersen* knew that the plaintiff's vehicle was approaching from the rear and decided not to look back again within 500 feet of his turn.

***Gary's Negligence***

There is no genuine issue of material fact with respect to Gary's negligence in failing to maintain a proper lookout before executing his left turn. In his deposition, Gary makes the following admissions:

> Q. Did you observe if there was anyone behind you before you applied your brakes?
> A. Before I applied my brakes?
> Q. Yes.
> A. Right on top of the hill, I looked in the mirror, and I didn't see nobody.
> Q. Is that the only time you looked behind you?

| | | |
|---|---|---|
| | A. | Yes. I was focused on going toward Norfolk. I did not – that's true. |
| | . . . . | |
| | Q. | What happened as you went to turn left? |
| | A. | I looked in my mirror. Didn't see nobody. So I looked in my outside mirror. And I got a – call it a little reflector called a blind spot mirror. That's when I noticed a car going around me. It was too late. |
| | Q. | So you were already into your turn – |
| | A. | Yes. |
| | Q. | – when you saw the other car? |
| | A. | Yes. |
| | Q. | So that you had looked behind you before you were at the top of the hill? |
| | A. | Right. |
| | Q. | And then you didn't look again until – |
| | A. | Right. |
| | Q. | – you were making your left-hand turn? |
| | A. | Yes. |
| | Q. | What happened when you saw the car going – trying to go around you? |
| | A. | Nothing I can do. Nothing. |
| | Q. | There was no time to react? |
| | A. | No. Nothing. |

G. Brown Depo., 29:23 to 30:7; 30:19 to 31:15.

Evidence submitted by the Plaintiffs and relied upon by them in their brief shows that the crest of the "hill" in question was 750 feet east of the right-of-way of the driveway where Gary began his left turn. (Dr. Sokol Drawing, Filing No. 39, Exhibit I). The Plaintiffs argue that (1) Higgins could have come over the crest of the hill and reached the point of impact in a mere 8.5 seconds, (2) Gary looked in his rear-view mirror immediately *before* making the left turn, and (3) Gary's view was obstructed by the hill, Higgins's high rate of speed[2], and the "blind spot" in Gary's rear-view mirror. (Plaintiffs' Brief in Opposition to Defendant's Motion for Partial Summary Judgment, Filing No. 37, pp. 9, 16, 20). None of these contentions negates the fact that Gary was negligent as a matter of law.

---

[2]All evidence before the Court is that Higgins was at all times traveling within the speed limit.

Looking in a rear-view mirror for approaching vehicles 750 feet before making a left turn does not satisfy Nebraska's standard for maintaining a proper lookout. Gary testified that he did not look back for approaching traffic again until he was making his left turn and there was no time to react. Even if Gary had looked in his rear-view mirror immediately *prior* to making the left turn and saw no one, as his attorney now asserts, Gary did not maintain a proper lookout because he failed to check his side mirror or look over his shoulder for passing vehicles *before* making the turn. There were no unusual conditions or circumstances obstructing Gary's view that would make his negligence a question for the jury.

While the Defendant's Motion for Partial Summary Judgment simply asks the Court to find "in [Higgins's] favor on the issue of the plaintiff Gary Brown being negligent as a matter of law," the Defendant's *brief* asks the Court to make an allocation of negligence between Gary and Higgins, and find that Gary's negligence was fifty per cent or more of the proximate cause of the accident, barring Gary's claim.[3]

There is some evidence in the record from which a jury could conclude that Higgins was negligent in attempting to pass the Browns' truck. If a jury believes Gary's testimony that he activated his left turn signal 100 to 110 feet before the making the turn[4], and

---

[3] Filing No. 35, p. 1. *See* Neb. Rev. Stat. 25-21,185.09 (1995).

[4] Gary testified that he activated his left turn signal when he reached a crack in the road:

| | |
|---|---|
| [Plaintiffs' Counsel]: | I'm not sure what crack you're talking about. There's a lot of cracks on the road. You know, I'm not even sure, was the question how many feet back you was or where – |
| [Defendant's Counsel]: | Right. Where he was when he turned his signal on. |
| [Plaintiffs' Counsel]: | Gary, do you know how many feet back from the – from the driveway you were? Earth to Gary. |
| [Gary]: | Good 100, 100 – probably 100 – like, 110 feet maybe, most likely. |

G. Brown Depo. 26:21 to 27:8.

exhibited brake lights, a jury could determine that Higgins was negligent in attempting to pass the truck.  Although Higgins will be entitled to a jury instruction to the effect that Gary was negligent as a matter of law in failing to maintain a proper lookout, there remain genuine issues of material fact with respect to the proximate cause of the accident and the proper allocation of negligence between Gary and Higgins.

IT IS ORDERED:

1. The Defendant's Motion for Partial Summary Judgment (Filing No. 34) is granted in part, as follows:  The Court finds that the Plaintiff Gary Brown was negligent as a matter of law in failing to maintain a proper lookout; and

2. The Court finds that there are genuine issues of material fact remaining for the jury regarding the proximate cause of the accident and the proper allocation of Plaintiff Gary Brown's negligence and the Defendant's negligence, if any.

DATED this 23rd day of June, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

Gary's testimony would place him in minimal compliance with the signaling requirement set forth in Neb. Rev. Stat. 60-6,161(2)(2004).